## In re SHANNON.
### Patent Appeal No. 3808.

Court of Customs and Patent Appeals.
Dec. 6, 1937.

Edward A. Hathaway, of Philadelphia, Pa., for appellant.

R. F. Whitehead, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for the Commissioner of Patents.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

LENROOT, Associate Judge.

This is an appeal from a decision of the Board of Appeals of the United States Patent Office, affirming a decision of the examiner, rejecting all of the claims of appellant's application as being unpatentable in view of the cited prior art. The claims are numbered 1 to 6, inclusive; of these, claim 4 is thought to be illustrative and reads as follows:

"4. A power reverse mechanism comprising a motor, a valve and body therefor secured to said motor, a floating lever for said valve, and a bracket integrally formed with said body for guiding said floating lever, said bracket projecting down alongside of said motor."

The references relied upon are:
Shaw, 1,819,795, August 18, 1931.
Osbourne, 1,503,280, July 29, 1924.
Lang, 1,480,940, January 15, 1924.

The subject-matter of appellant's application is an alleged improvement in power reverse gears for steam locomotives. Power reverse gears for use in this connection are well known in the art; because of the weight of the valve gear on the main power cylinders of the locomotive, together with the weight of the incidental linkage between such gear and the cab, it was a difficult matter to manually make adjustments in the speed of the locomotive or to reverse it; consequently power reverse gears were devised whereby these adjustments are attained by means of a fluid-operated motor. The power reverse gear disclosed by appellant, with the one exception hereinafter noted, is of the conventional type known to the art, as illustrated by the principal reference Shaw. Appellant shows a cylinder, having heads at both ends. Within the cylinder is a piston, said piston being mounted on a piston rod; the piston rod projects through each

of the cylinder heads. Mounted on top of the cylinder, preferably by bolts so that it may be readily detached, is a valve mechanism, consisting of a valve stem body having intake and exhaust ports, the valve mechanism itself being supported in a suitable housing secured to the end of the valve stem body. The valve mechanism is an entirety and can be removed from the cylinder without the necessity of disturbing the 'cylinder heads. Appellant further shows a conventional "reach rod," extending back to the cab, by which rod the valve mechanism is actuated by the engineer; there is also disclosed a floating lever of conventional form, to the lower end of which is pivoted the usual "restoring link." This floating lever, as it is moved, passes between two guides which have a frictional engagement with the surface of said floating lever. It is the location of these guides that is not conventional. The guides in question are mounted on a bracket, which bracket is supported by the valve mechanism. Thus, in appellant's structure, the valve mechanism also supports the guides for the floating lever.

As hereinbefore noted, the principal reference is Shaw. As to this reference, it may be said that it discloses substantially the same structure as is disclosed by appellant, except for the positioning of the guides for the floating lever. In Shaw these guides are shown as being mounted on the cylinder itself, being bolted thereto through the cylinder heads. His patent, however, after describing said mounting in detail, states: " * * * It will be obvious that other means for mounting the guide on the reverse gear may be employed, if desired."

The patents to Osbourne and Lang need not be considered in detail. They are relied upon for a showing that it is old to mount desired parts of mechanisms on the valve casing.

The examiner rejected the claims on appeal on Shaw in view of Lang and Osbourne. Upon appeal to the Board of Appeals, the decision of the examiner was affirmed with only a general statement that the advantages of appellant's arrangement were regarded as being obvious to one skilled in the art. From the decision of the board appellant took this appeal.

Appellant, in his appeal, stresses the fact that ever since the development of power reverse gears one great difficulty has been the tendency of the gear to "creep";

in other words, due to the excessive vibration to which such gears are subject when the locomotive is traveling at high speeds, and also due to wear at various parts of the linkage, the power reverse gear has a tendency to move from the position at which it is set by the engineer, necessitating consequent readjustment. That this is true seems to be borne out by the prior art; "creeping" seems to have been recognized as a major difficulty with power reverse gears, and various methods have been tried to obviate it. Appellant does not claim to have eliminated it wholly, but contends that his structure tends to remove one of the contributing factors producing it. It is his contention that, by mounting the guides for the floating lever on the valve mechanism itself, the vibrations set up in the valve and valve control mechanism are self-contained and, as he states in his application, "As a result any lateral vibrations transmitted to the floating lever will not be unduly transmitted to the valve because such forces are self-contained with the valve casing."

As to Shaw, appellant argues that lateral vibrations of the floating lever are likely because, the guides being on the cylinder itself, relative vibration between the guides and the lever is greater than in his structure, where the assembly is all one with the valve casing.

We are not satisfied that the Patent Office tribunals came to the wrong conclusion in rejecting appellant's claims. It will be noted that the valve mechanism of appellant's structure, protected by a housing, is mounted on the top of the cylinder, preferably by being bolted thereto. In so far as general vibration of the floating lever is concerned, caused by a locomotive rolling and swaying while moving over the track at high speed, which the cited prior art states is one of the principal causes of "creeping," we see no material distinction between appellant's structure and that disclosed by Shaw. In either case the floating lever vibrates in consonance with the vibration of the cylinder. However, there is one cause of vibration which appellant's structure would, no doubt, obviate in part, which is an improvement over the structure disclosed by Shaw. We have hereinbefore noted that Shaw's guides are attached to the cylinder by being bolted to the ends thereof. If the heads of the cylinder should become loose in Shaw, vibration would be transmitted from such loose heads to the floating lever throughout its length, while the valve mechanism itself might not

be affected by this vibration. This could not occur in appellant's structure, for neither his guides nor his valve mechanism are attached to the heads of the cylinder.

While this would seem to be a positive advantage should the cylinder heads become loose, we think it would be obvious to one skilled in the art that vibration of the floating lever from that cause could be readily obviated by attaching the guides either to the portion of the cylinder between the heads, or to the valve mechanism as appellant has done.

One other contention of appellant will be briefly commented upon, and that is that his guides being entirely independent of the cylinder heads, the latter may be removed for inspection and repair without disassembling the guides, and that this improvement renders the claims patentable.

While this is an improvement over the cited prior art, it seems to us that it would readily occur to one skilled in the art that the attachment of the guides to the sides of the cylinder or to the valve mechanism would be an advantage in disassembling the cylinder.

For the reasons stated, the decision of the Board of Appeals is affirmed.

Affirmed.